**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

| | | |
|---|---|---|
| JUANITA DELGADO,<br>on behalf of plaintiff and the class defined<br>herein, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | 4:12-cv-04057-SLD-JAG |
| | ) | |
| vs. | ) | |
| | ) | |
| CAPITAL MANAGEMENT SERVICES, LP;<br>CMS GENERAL PARTNER LLC; and CMS<br>GROUP, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

**I.      INTRODUCTION**

Defendants CMS General Partner, LLC and CMS Group, Inc. (collectively "CMS

General Partners") have moved to dismiss Plaintiff's First Amended Complaint, relying on a

recent decision in *McMahon v. LVNV Funding, LLC*, 12 C 1410, 2012 U.S. Dist. LEXIS 92655

(N.D. Ill. July 5, 2012) ("*McMahon I*").[1] *McMahon I* held that a federal court need not give

either *Chevron* deference or *Skidmore* respect to the position taken by the Federal Trade

Commission ("FTC") in *United States of America (For the Federal Trade Commission) v. Asset

Acceptance, LLC*, Case No. 8:12-cv-182-T-27EAJ (M.D. Fla.) ("the Asset Consent Decree

case").

In the Asset Consent Decree, the FTC took the position that a debt buyer must inform

debtors that the debts it was seeking to collect were barred by the applicable statute of

limitations. Instead *McMahon I* relied on court decisions, which predate the Asset Consent

Decree case and which were decided without the benefit of the FTC's expertise, holding that a

---

[1]Defendants also rely on *Magee v. Portfolio Recovery Assocs., LLC*, 12 C 1624, 2012 U.S.
Dist. LEXIS 116666 (N.D. Ill. Aug. 20, 2012), which relied on cases which pre-date the Asset
Consent Decree case.

debt collector does not violate the Fair Debt Collections Practices Act ("FDCPA") when it attempts to collect a time-barred debt unless it threatens legal action.

Subsequent to *MacMahon I*, the *McMahon* court granted the *McMahon* plaintiff's motion to amend the complaint, holding that a collection letter which offers to settle a time-barred debt could deceive the unsophisticated consumer into believing that there was a legally enforceable obligation to pay the debt. *McMahon v. LVNV Funding, LLC*, 12 C 1410, 2012 U.S. Dist. LEXIS 113576, *9 (N.D. Ill. Aug. 13, 2012) ("*McMahon II*"). More recently, the Court in *Rawson v. Source Receivables Management, LLC et al.*, 11 C 8972, 2012 U.S. Dist. Lexis 125205 (N.D. Ill. Sept. 4. 2012) denied a motion to dismiss plaintiff's claim that dunning letter violated the FDCPA when it implied that a time-barred debt was legally enforceable.

The Seventh Circuit has pointed out that federal judges are not experts on the behavior of unsophisticated consumers. "[W]hat seems pellucid to a judge, a legally sophisticated reader, may be opaque to someone whose formal education ended after sixth grade." *Johnson v. Revenue Management Corp.*, 169 F.3d 1057, 1060 (7th Cir.1999).

Both the Seventh Circuit and the Supreme Court have also held that the FTC *does* have such expertise. The Supreme Court has held that the FTC has the authority to define "deceptive", a term used in both the FTC Act and the FDCPA,"with particularity by the myriad of cases from the field of business." *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 384-85 (1965). The Court noted:

> This statutory scheme necessarily gives the Commission an influential role in interpreting § 5 [of the FTC Act] and in applying it to the facts of particular cases arising out of unprecedented situations. Moreover, as an administrative agency which deals continually with cases in the area, the Commission is often in a better position than are courts to determine when a practice is 'deceptive' within the meaning of the Act. This Court has frequently stated that the Commission's judgment is to be given great weight by reviewing courts. This admonition is especially true with respect to allegedly deceptive advertising since the finding of a §5 violation in this field rests so heavily on inference and pragmatic judgment. . . ."

*Id.*, 380 U.S. at 385. Although the FTC does not have the authority to issue regulations "with respect to the collection of debts by debt collectors," 15 U.S.C. § 1692l(d), it "is the expert body

to determine what remedy is necessary to eliminate the unfair or deceptive trade practices which have been disclosed." *Encyclopaedia Brittanica, Inc. v. F.T.C.*, 605 F.2d 964, 970 (7th Cir. 1979), citing *Jacob Siegel Co. v. FTC*, 327 U.S. 608, 612-13 (1946). Unlike private litigants, the FTC is "not required to conduct consumer surveys before it determines" that a practice is misleading. *Kraft, Inc. v. F.T.C.*, 970 F.2d 311, 319 (7th Cir.1992), citing *FTC v. Colgate-Palmolive*, 380 U.S. 374, 391-392 (1965).

When an agency with such expertise studies the matter and expresses its considered view, courts should follow it.

Here, as discussed below, this Court should give deference, or at least respect, to the expertise of the FTC, and hold that it is an unfair and deceptive practice for a debt collector to dun on a time-barred debt without informing the debtor that (a) the debt is time-barred and (b) that a payment will revive the debt.

The reason for the FTC's view is illustrated by defendants' letter. Offering a "settlement" of an out-of-statute debt that "is less than the full balance due" (First Amended Complaint ("FAC") ¶ 25, and Exhibit A thereto) comes about as close to a direct statement that a debt is legally enforceable through litigation without using the words "litigation" or "legally enforceable". It is itself a misrepresentation of "the character, amount, or legal status of any debt" in violation of § 1692e(2)(A) of the FDCPA. Indeed *McMahon II* held a collection letter which offers to settle a time-barred debt could deceive the unsophisticated consumer into believing that there was a legally enforceable obligation to pay the debt, in violation of the FDCPA. *McMahon*, 2012 U.S. Dist. LEXIS 113576, *9 (N.D. Ill. Aug. 13, 2012).

This Court should therefore deny the motion to dismiss.

## II.    FACTS

This action concerns attempts by defendants[2] to collect an allegedly unpaid credit card

---

[2]    In addition to CMS General Partners, the First Amended Complaint also seeks to hold their general partner, Capital Management Services, LP, liable.

debt. (FAC ¶ 14.)  If the debt is owed at all, the last payment was made prior to December 23, 2004. (FAC ¶ 16.) In connection with their collection efforts, defendant Capital Management Services, LP sent plaintiff Juanita Delgado the letter at issue. (Cmplt., ¶ 14 and Exhibit A thereto.) The letter states, *inter alia*:

> Capital Management Services is authorized to accept less than the full balance due as settlement of the above account. The settlement amount of $721.24, which represents 30% of the amount presently owed, is due in our office no later than forty-five (45) days after receiving this notice.  We are not obligated to renew this offer.

(Cmplt., ¶ 25, and  Exhibit A thereto.) The settlement offer is made without revealing that the debt is barred by the 5-year Illinois statute of limitations and that the payment of any amount will revive the debt.

Defendants regularly attempt to collect credit card debts on which the statute of limitations has expired. (FAC ¶ 22.)  Defendants dun consumers for time-barred debts without disclosing the fact that the debts are time-barred and without disclosing the dates of the transactions giving rise to the debts.  (FAC ¶¶ 21-22.)

## III. THE FEDERAL TRADE COMMISSION HAS DETERMINED THAT IT IS AN UNFAIR AND DECEPTIVE PRACTICE TO DUN CONSUMERS FOR TIME-BARRED DEBTS WITHOUT DISCLOSURE OF THAT FACT

Before responsibility was transferred to the Consumer Financial Protection Bureau in 2011, the FTC was the agency entrusted with enforcing both the FTC Act and the FDCPA with the general goal of promoting the efficient functioning of the marketplace by protecting consumers from unfair or deceptive practices. The FTC Act which prohibits unfair methods of competition and unfair or deceptive acts and practices in or affecting trade or commerce.  15 U.S.C. § 45(a). The FDCPA generally prohibits unfair or deceptive practices in connection with debt collection. 15 U.S.C. § 1692 *et seq*.

In the Asset Consent Decree case, (Complaint attached as Appendix A hereto), the FTC sued a major debt buyer, Asset Acceptance, LLC ("Asset"), and alleged that Asset regularly collected time-barred debts. (Appendix A, ¶ 30.)  The FTC alleged that:

> Many consumers do not know if the accounts that Asset is attempting to collect are

4

beyond the statute of limitations. Consumers also do not realize that making a partial payment on a debt, or making a written promise to pay will, in many instances, revive the debt. When Asset contacts consumers to collect on a debt, many consumers believe they could experience serious negative consequences, including being sued, if they fail to pay the debt. Similarly, many consumers believe that making a partial payment on a debt in response to Asset's collection efforts is a positive action that can avert the negative consequences of nonpayment. If consumers knew, in connection with a past-statute debt, that Asset had no legal means to enforce collection of the debt, or understood that making a partial payment or a written to promise to pay would revive it, some consumers would likely choose not to make a payment or a written promise to pay.

(Appendix A, ¶ 34.)

The FTC alleged that by dunning consumers on time-barred debts without disclosure of that fact, Asset violated both §5(a) of the Federal Trade Commission Act, 15 U.S.C. §45(a)[3] (Appendix A, ¶¶ 56-58), and §§1692e, 1692e(2)(A), and 1692e(10) of the FDCPA[4] (Appendix A, ¶¶81-83). Both 15 U.S.C. § 45(a) and 15 U.S.C. § 1692e prohibit deceptive acts and practices. Indeed, § 1692e represents a codification and expansion of FTC precedent relating to debt collection practices under §45(a). *Jeter v. Credit Bureau*, 760 F.2d 1168 (11th Cir. 1985).

The same day as the complaint was filed, Asset consented to a judgment (Appendix C) in

---

[3]   15 U.S.C. §45(a) provides: "**(1) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful.**"

[4] Section 1692e provides:

**§ 1692e.         False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(2)       The false representation of--**

**(A)       the character, amount, or legal status of any debt; . . .**

**(10)       The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

which it was required to disclose (¶I V.A-D), "for any debt that the Defendant knows or should know may be beyond the applicable statute of limitations," that "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it."  The judgment also required Asset to pay $2.5 million.  (Appendix B, p.2.)

The FTC also issued a news release setting forth its position concerning collection of time-barred debts. (Appendix B.) The release explained the FTC's reasoning:

> "Most consumers do not know their legal rights with respect to collection of old debts past the statute of limitations," said David Vladeck, Director of the FTC's Bureau of Consumer Protection. "When a collector tells a consumer that she owes money and demands payment, it may create the misleading impression that the collector can sue the consumer in court to collect that debt.  This FTC settlement signals that, even with old debt, the prohibitions against deceptive and unfair collection methods apply."

Finally, the FTC issued a notice to industry (Appendix D) in which it described Asset's violation as having "failed to disclose that debts were too old to be legally enforceable or that a partial payment would restart the clock". The complaint and judgment specifically address dunning on time-barred debts without disclosure of that fact.

The FTC's action in the Asset Consent Decree case followed five years of investigation and study of debt collection abuses generally and the collection of time-barred debts in particular.  In late 2007, the FTC conducted a series of public workshops to evaluate the need for reform in the debt collection system. Its subsequent report, *Collecting Consumer Debts: The Challenges of Change* (2009),[5] identified the advent and growth of the debt-buying industry as the most significant change in debt collection practices since the enactment of the FDCPA more than 30 years ago, and discussed some of the consumer challenges raised by this industry change.  The report noted (pp. 3-4) that large amounts of debts are sold to debt buyers, such as the defendants herein, who generally pay 5% or less of the amount allegedly owed.

> The most significant change in the debt collection business in recent years has been the advent and growth of debt buying.  Some companies simply buy debt and seek to recover on  it.  In addition to these companies, debt buyers also include collection law firms,

---

[5]  Available at  www.ftc.gov/bcp/workshops/debtcollection/dcwr.pdf.

contingency collection agencies, and investors who purchase and resell portfolios of delinquent debt.  Debt  buyers purchase charged-off debt from credit card issuers, retail merchants, telecommunications  providers, utilities, and other credit providers. Purchased debt typically is classified by its age and the number of debt collectors who have attempted to collect it before it was sold. . . .   Debt buying increased substantially over the decade between 1997 and 2007, and industry analysts estimate that debt buying will  grow at an 11% rate over the next five years and reach annual revenues of $6.2 billion by 2011."  (*Id.*, pp. 13-14.)

Moreover, debt buyers receive only minimal information about the debts they claim to purchase: "A leading association of debt buyers, DBA International ('DBA'), acknowledged that it is common for a debt buyer to receive only a computerized summary of the creditor's business records when it purchases a portfolio . . . ."  (*Id.*, 22.)

This practice of acquiring debts without any evidence of them directly impinges on the interest served by statutes of limitation. "By requiring that owners of debt file suit relatively close in time to the delinquency, statutes of limitations help ensure that courts have necessary evidence available to resolve disputes, and thus assist consumers in defending themselves."  (*Id.*, pp. 62-63.) The FTC noted that ". . . .there is a consensus that suing or threatening to sue to collect time-barred debt is unlawful and unethical for debt collectors. . . ." (*Id.*, p. 64), but noted that further measures may be necessary.

To obtain more information, during the latter part of 2009 the FTC convened public roundtables in Chicago, San Francisco, and Washington, D.C. These events brought together representatives of the debt collection industry, consumer advocates, private attorneys, academics, government officials, arbitration providers, judges, and others specifically to discuss issues related to debt collection litigation. The Commission also solicited and received public comments. The Commission's 2010 Debt Collection and Arbitration Roundtables Report, *Repairing a Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration* (2010)("Report"),[6] examined the deficiencies in debt collection lawsuits at the filing and default stages, particularly in actions brought by debt buyers.

---

[6] Available at http://www.ftc.gov/os/2010/07/debtcollectionreport.pdf..

The 2010 Report again noted  "that the FDCPA bars actual or threatened suit to collect on time-barred debts."  (Report, p. 23.) However, the FTC went further and concluded (Report, pp. 26-28) that other attempts to collect time-barred debt were misleading:

> The Commission takes no position on whether the FDCPA should be amended to preclude  collectors from collecting debt that they know or should know is time-barred. Nevertheless,  because most consumers do not know or understand their legal rights with respect to the  collection of time-barred debt, the Commission believes that in many circumstances such a  collection attempt may create a misleading impression that the collector can sue the consumer  in court to collect the debt, in violation of Section 5 of the FTC Act and Section 807 of the  FDCPA.  To avoid creating this misleading impression, collectors would need to disclose clearly and prominently to consumers before seeking payment on such time-barred debt that, because of the passage of time, they can no longer sue in court to collect the debt or otherwise compel payment.

> The second issue related to collecting on time-barred debt roundtable participants addressed  was the "reviving" of such debt.  In many states, making a payment on a debt after it has gone into default triggers the start of a new statute of limitations period for the entire debt, even if the  original statute of limitations period has already expired. . . . Debt collectors generally do not disclose to consumers that making any payment on a time-barred debt revives the collector's ability to sue to collect on the entire debt. . . .

>> In states where laws continue to provide that a partial payment on a time-barred debt revives it, the Commission believes that in many circumstances a collector's attempt to collect a debt that it knows or should know is time-barred may create a misleading impression as to the consequences of making such a payment, in violation of Section 5 of the FTC Act and Section 807 of the FDCPA.  To avoid creating a misleading impression, collectors would need to disclose clearly and prominently to consumers prior to requesting or accepting such payments that (1) the collector cannot sue to collect the debt and (2) providing a partial payment would revive the collector's ability to sue to collect the balance.

Among the reasons cited by the FTC for adopting this position were that debt buyers in particular frequently threatened or filed suits to collect time-barred debt notwithstanding the existing prohibition on doing so, apparently with the expectation that the consumers would default and allow judgments to be entered against them. (Report, pp. 29-30.)

Thus, the FTC's position, adopted in the filing and settling of the *Asset* litigation, represents a considered determination of what is "deceptive", arrived at after lengthy study in the Commission's area of expertise.  As discussed below, it is both entitled to deference and persuasive, and should be followed by this Court.

## IV.   THE COURT SHOULD FOLLOW THE FTC'S DETERMINATION OF WHAT CONSTITUTES AN UNFAIR AND DECEPTIVE PRACTICE

*McMahon I* acknowledged, "At the time that the FTC filed suit against Asset, it held 'some interpretive and enforcement authority with respect to the FDCPA.'"  *McMahon I* at p. 5, [citing *Carter v. AMC, LLC,* 645 F.3d 840, 843 (7th Cir. 2011); 15 U.S.C. §16921(d)(2001)]. Indeed the FTC is expected to flesh out what is unfair and deceptive. *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 384-85 (1965); *County of Los Angeles v. Shalala*, 338 U.S. App. D.C. 168, 192 F.3d 1005, 1016 (D.C. Cir. 1999) (quoting *National Fuel Gas Supply Corp. v. FERC*, 258 U.S. App. D.C. 374, 811 F.2d 1563, 1569 (D.C. Cir. 1987); citing *Chevron*, 467 U.S. at 843-44); *Trans Union LLC v. FTC*, 295 F.3d 42, 50 (D.C. Cir. 2002).

Administrative agencies make law through adjudication as well as by rulemaking. *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947). "And the choice made between proceeding by general rule or by individual, *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency." *Id.*[7]

The decision of the FTC to file a complaint represents its construction of the relevant statutes, in this case both the FTC Act and the FDCPA, even if the proceeding is resolved by a consent decree.  In *FTC v. Mandel Bros.*, 359 U.S. 385, 391 (1959), the FTC had determined that receipts issued by retailers to consumers purchasing fur were "invoices" within the meaning of the Fur Products Labeling Act. The Supreme Court held that "The inclusion of retail sales slips in invoices has been the consistent administrative construction of the Act. This contemporaneous construction is entitled to great weight even though it was applied in cases settled by consent rather than in litigation." Thus the FTC's consent decree with Asset is entitled to great weight, even though it did "not constitute a formal adjudication."  *McMahon I* at *6. Indeed, the FTC "has wide discretion on selecting its methods of remedying deceptive and unfair practices. This discretion extends to the decision whether to proceed by rulemaking or adjudication."

---

[7]    Thus the conclusion by the court in *McMahon I* that the "FTC ha[d] not issued an official commentary or advisory opinion" is not telling. *McMahon I*, at *8. (N.D. Ill. July 5, 2012). Official commentaries and advisory opinions are issued to advise the industry of an FTC position. Here the FTC conveyed its position by filing a complaint and entering into a consent decree and by issuing a notice to the industry.

*Encyclopaedia Brittanica, Inc. v. F.T.C.*, 605 F.2d 964, 973 (7th Cir. 1979), citing *SEC v. Chenery, supra*.

Similarly, in *Ramson v. Layne*, 668 F. Supp. 1162, 1168-69 (N.D. Ill. 1987), the position taken by the FTC in filing complaints and obtaining consent orders against endorsers appearing in advertisements was treated as the FTC's position on the legal issue: "Although none of those cases represents an adjudicated finding of liability or enunciates a formal rule for when an endorser may be held liable under the [FTC] Act, they do make one thing plain: In FTC's view endorsers may, under certain circumstances, violate the Federal Act." Contrary to the conclusion of the court in *McMahon I (*at *7), *Ramson* granted deference to the FTC's consent decrees.

In *In re TJX Companies Retail Security Breach Litigation*, 564 F.3d 489, 496-97 (1st Cir. 2009), the court found relevant "the host of FTC complaints and consent decrees condemning as 'unfair conduct' specific behavior similar to that charged by plaintiffs," citing *Schubach v. Household Finance Corp.*, 375 Mass. 133, 135, 376 N.E.2d 140 (1978), *PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596, 321 N.E.2d 915 (1975), and *Commonwealth v. Fremont Inv. & Loan*, 452 Mass. 733, 747-48, 897 N.E.2d 548 (2008).

Similarly, in *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 529 (Alaska 1980), the court held: "[I]t is beyond dispute that the Federal Trade Commission has asserted its jurisdiction over unfair or deceptive acts and practices of debt collection agencies, by administrative rule-making and administrative adjudication. Contrary to O'Neill's assertion, adjudications which are resolved by consent decree constitute an administrative interpretation of the Federal Trade Commission Act which have clear precedential value."

*McMahon I* purports to distinguish *Commonwealth* and *O'Neill Investigations, Inc.*, *supra*, because they both involved the FTC's rule-making powers under the FTC Act, whereas the FTC has no rule-making powers under the FDCPA. *McMahon I*, at *8-9, fn. 4. However, the FTC has been given authority to enforce both the FTC Act and the FDCPA, both of which

10

condemn "unfair and deceptive practices".[8]

The FTC's interpretation of what is "deceptive" in the area of debt collection is entitled to deference by the courts. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Where "Congress enacts an ambiguous provision within a statute entrusted to the agency's expertise, it has 'implicitly delegated to the agency the power to fill those gaps.'" *Trans Union LLC v. FTC*, 295 F.3d 42, 50 (D.C. Cir. 2002) citing *County of Los Angeles v. Shalala*, 192 F.3d 1005 (D.C. Cir. 1999) (quoting *National Fuel Gas Supply Corp. v. FERC*, 811 F.2d 1563, 1569 (D.C. Cir. 1987). The FTC was empowered to determine, based upon its expertise, what practices are unfair or deceptive.

*Chevron* deference extends to interpretations reached in adjudications, *Trans Union Corp. v. FTC*, 81 F.3d 228, 230  (D.C. Cir.1995) citing *Midtec Paper Corp. v. United States*, 857 F.2d 1487, 1497 (D.C. Cir.1988). Deference is appropriate even to interpretations arising pursuant to consent decrees. *Commonwealth ,supra*, 897 N.E.2d 548 (according deference to concepts of unfairness in an FDIC consent decree governing mortgage lending standards); *O'Neill Investigations*, *supra*, 609 P.2d 520 (giving deference to FTC administrative interpretations of state unfair and deceptive practices act derived from consent decrees).

An agency's interpretation of its governing statutes – here, the FTC Act and FDCPA – is followed by the courts as long as the interpretation is reasonable, even if a different interpretation would also be reasonable. If a statute is ambiguous or silent, the court must defer to any "permissible construction of the statute" by the agency. *Chevron U.S.A., Inc.*, 467 U.S. at 843.  The court may reverse the agency's decision only if it is "arbitrary, capricious, or manifestly contrary to the statute." *Medical Ctr. Pharm. v. Mukasey*, 536 F.3d 383, 393 (5th Cir. 2008). "If the decision is based on a reasonable interpretation of the statute, we defer to the agency's construction." *Tex. Coalition of Cities for Utility Issues v. F.C.C.*, 324 F.3d 802, 807

---

[8]  Indeed, the complaint against Asset in the Asset Consent Decree case was brought under both Acts. (Appendix A)

(5th Cir. 2003) (citing *Chevron*, 467 U.S. at 844) ("[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.")

Finally, even if the FTC's opinion as expressed by the *Asset* complaint and consent decree are not entitled to *Chevron* deference, they are entitled to respect to the extent they have the power to persuade. *Skidmore v. Swift & Co,* 323 U.S.134, 140 (1944); *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000).

*McMahon I* at *7 states that "McMahon has not cited to any case law in which a court granted *Chevron* deference to an agency's consent decree with an unrelated party." However, in *Ramson*, *supra*, the court treated complaints filed and consent orders obtained against endorsers by the FTC as setting forth the FTC's view that endorsers may be held liable under the FTC Act, albeit without citing *Chevron*.  *Ramson*, 668 F.Supp. at 1168-69. Similarly, the court in *United States SEC v. Blackwell,* 291 F. Supp. 2d 673, 694 (S.D. Ohio 2003), granted *Chevron* deference to a consent order with an unrelated party, although it had since been followed in an adjudicated case.  Furthermore, the court in *Kline v. Mortgage Electronic Security Systems*, 3:08cv408, 2012 U.S. Dist. LEXIS 55366, *7-16 (S.D. Ohio April 19, 2012) held that an *amicus* brief interpreting the FDCPA filed by the FTC and the Consumer Financial Protection Bureau is entitled to *Chevron* deference, even where the agency's position is inconsistent with prior judicial decisions. The filing of a complaint and acceptance of a consent decree by one of those agencies is no less a statement of the agency's position and should also be entitled to deference.

Here the FTC's interpretation of unfairness was subjected to a deliberative process, including notice and an opportunity for comment, through the public workshops and 2010 Report described above, making its determination equivalent to a regulation issued in the context of Congressional delegation of regulatory authority.

## V.   THE FTC'S POSITION IS REASONABLE AND PERSUASIVE

In the present case, it is reasonable for the FTC to conclude that the word "deceptive" in

the FTC Act and FDCPA covers any attempt to collect a debt which is no longer enforceable as a result of the expiration of applicable limitations periods, even if the attempt does not involve an explicit threat of suit. Alternatively, *Skidmore* deference should be afforded. The FTC's extensive factual review of the unfair impact of the methods used by debt collectors to collect time-barred debts is persuasive.

In this regard, the FTC has not only extensive experience in investigating and prosecuting debt collectors under both the FTC Act and the FDCPA, but has recently conducted extensive studies of debt collection practices. The FTC receives thousands of complaints regarding debt collection practices each year. *FTC Annual Report 2010: Fair Debt Collection Practices Act* (2010) (Appendix E, p. 3). It has filed numerous law enforcement actions against individuals and companies that engaged in deceptive debt collection practices under both statutes.  In March 2011, the Commission announced a settlement agreement with debt collector, West Asset Management, Inc., resulting in a $2.8 million civil penalty. *United States v. West Asset Mgmt., Inc.*, No. 1:11-cv-0746 (N.D. Ga. Mar. 14, 2011). In October 2010, the FTC reached a settlement agreement with Allied Interstate, Inc., one of the nation's largest debt collectors, resulting in a $1.75 million civil penalty. *United States v. Allied Interstate, Inc.*, No. 10-cv-04295 (D. Minn. Oct. 22, 2010). In March 2010, the FTC announced a settlement agreement with collector Credit Bureau Collection Services and two of its officers, resulting in a civil penalty of more than $1 million. *United States v. Credit Bureau Collections Servs., et al.*, No.2:10-cv-169 (S.D. Ohio Mar. 31, 2010).

In addition to litigation, as discussed above in section III, the FTC convened conferences and workshops that examined changes in the debt collection landscape. Thus, the FTC has considerable experience in issues related to debt collection.

Furthermore, other states and agencies have expressed agreement with the FTC. North Carolina Gen. Stat. §75-55 (1994) (unconscionable to collect any debt by seeking or obtaining an acknowledgment of any debt barred by the statute of limitations);  940 Code Mass. Reg. 7.00

(2012) (creditors prohibited from attempting to collect a debt that is time-barred unless they make certain disclosures); New Mexico Ann. Code §12.2.12.9 (2012) (unfair or deceptive trade practice for any debt collector to attempt to collect any payment that the debt collector knows or has reason to know is a time-barred debt without disclosing that the debt is time-barred and the consequences of that fact and of payment); 6 Rules of the City of New York City 2-191 (2010) (debt collector must advise debtor if debt is time-barred).

In this case, defendants' dunning letters illustrate the wisdom of the FTC's interpretation. The letter at issue offers a "settlement." (FAC ¶ 25 and Exhibit A thereto.) An offer of a "settlement" implies a colorable legal obligation, as distinct from extortion and fraud. *WM. C. McGlynn v. D.B. Scott*, 58 N.W. 460, 463 (N. Dak. 1894) ("The law favors the settlement of honest differences, but it will not countenance extortion and fraud."); *In re Morton Allan Segall*, 509 N.E.2d 988, 991 (Ill. 1987) (letters offering settlement were "calculated to deceive"); *Collection Prof'ls v. Logan*, 296 Ill. App. 3d 959, 695 N.E.2d 1344 (3rd Dist. 1998) (accord and satisfaction requires a *bona fide* dispute).

In light of the FTC's extensive study of the use of language to convey meanings to the consuming public, it reasonably concluded that, rather than attempt to draw fine distinctions between overt or implicit threats of litigation and subtle suggestions that a claim was legally enforceable, a bright line rule was required, namely full disclosure that a debt was time-barred. Courts have wrestled with the question of whether, in connection with the collection of time-barred debts, various communications constituted "threats of litigation". *See, e.g.*, *Perretta v. Capital Acquisitions & Management Co.*, 2003 Dist. LEXIS 10070 (N.D.Cal. May 5, 2003) (statement that if debtor would not "work with" debt collector, "steps would be taken" constituted a threat of litigation); *Abels v. JBC Legal Group, PC*, 428 F.Supp. 2d 1023 (N.D.Cal. 2005) (mention of penalty provisions in letter on attorney letterhead not an implicit threat of litigation). The FTC was not obligated to allow debt buyers to acquire ancient debts for a penny on the dollar and then play games, attempting to sail as close to the line as possible, knowing that they would

14

make more money collecting the debts than paying in damages or fines.

      *McMahon I* found that "Neither the Asset complaint nor the Consent Decree constitute(d) a definitive policy statement by the FTC".  *McMahon I*, at \*8. But *McMahon I* then acknowledged that the 2010 FTC Report does discuss the case law and its deficiencies. *McMahon I*, at \*8-9. *McMahon I*, however, declined to give deference to the FTC's position in part because it found it to be ambiguous. *McMahon I* at \*9. It is not ambiguous  –  at the same time that the FTC filed the Asset Consent Decree Case, it issued a notice to the collection industry stating that Asset engaged in deception because it "failed to disclose that debts were too old to be legally enforceable or that a partial payment would restart the clock".  (Appendix D.)

      Further, there is no question that the FTC took action, and that the action is inconsistent with the proposition that a debt collector attempting to recover on a time-barred debt violates the FDCPA only if the attempt is "accompanied by a threat of litigation" (*McMahon I*, at \*4).  If there is any question as to what the agency's position is, the Court should invite the FTC and its successor the Consumer Financial Protection Bureau to state their views. *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 722 n. 2 (7th Cir. 2004); *Phillips v. AWH Corp.*, 376 F.3d 1382 (Fed. Cir. 2004). The word "deception" in the FDCPA and FTC Act should have the same meaning, regardless of whether a private party or the government is the plaintiff.

## VI.    THE MCMAHON I COURT'S RELIANCE IN ON PRE-ASSET CASES IS MISPLACED

      *McMahon I* relies upon four cases[9], all predating the FTC's action against Asset, for the proposition that "merely sending a letter seeking collection of a time-barred debt" does not violate the FDCPA unless they "implicitly or explicitly threaten litigation."  *McMahon I* at \*4. Defendant here also cites *Green v. NCO Inovision*, 2010 WL 147934, \*3 (D. N.J. 2010) and *Shorty v. Capital One Bank*, 90 F. Supp.2d 1330, 1332 (D. N.M. 2000).  Plaintiff does not dispute

---

    [9]*Murray v. CCB Credit Services, Inc.*, 2004 WL 2943656, \*2 (N.D.Ill. 2004); *Walker v. Cash Flow Consultants, Inc.,* 200 F.R.D. 613, 616 (N.D.Ill. 200); *Huertas v. Galaxy Asset Manangement*, 641 F. 3d 28, 33 (3rd Cir. 2011); *Freyermuth v. Credit Bureau Services, Inc.*, 248 F.3d 767, 771(8th Cir. 2001).

that this was the view of most courts before the FTC acted, at least absent a statement or implication regarding the date of the debt or that it was legally enforceable.  Indeed, the FTC noted that "there is a consensus that suing or threatening to sue to collect time-barred debt is unlawful and unethical for debt collectors" (2009 Report, p. 64.) The question is not how far courts were willing to go in the absence of action by the FTC, but whether the FTC was justified in moving the line.

The FTC has authority to move the line.  As stated in *FTC v. IFC Credit Corp.*, 543 F. Supp. 2d 925, 940 (N.D. Ill. 2008):

> It cannot be too often recalled that the FTC is charged with giving meaning to "the elusive, but congressionally mandated standard of fairness," *Sperry & Hutchinson Co.*, 405 U.S. at 244, which by its very nature, is a "flexible concept with evolving content." *FTC v. Bunte Bros., Inc.*, 312 U.S. 349, 353, 61 S. Ct. 580, 85 L. Ed. 881, 32 F.T.C. 1848 (1941). *Cf., Herring v. New York*, 422 U.S. 853, 866-867, 95 S. Ct. 2550, 45 L. Ed. 2d 593 (1975)("'fairness is a relative not an absolute concept'" dependent on circumstances). To implement "[a] statute expressive of such large public policy as that on which the [Federal Trade Commission] is based," *Phelps Dodge Co. v. NLRB*, 313 U.S. 177, 194, 61 S. Ct. 845, 85 L. Ed. 1271 (1941), Congress has given the FTC regulatory flexibility. Thus, rather than reflecting vacillation, the FTC's prior use of a restrictive definition reflects an exercise of that flexibility in response to perceived evils. In any event, "[t]he fact that the agency has from time to time changed its interpretation of [a] term…does not…. lead us to conclude that no deference should be accorded the agency's interpretation of the statute." *Chevron U.S.A., Inc.*, 467 U.S. at 863.

When an agency which has such expertise studies the matter and expresses its considered view, courts should follow it. "An FTC finding is to be given great weight by reviewing courts because it rests so heavily on inference and pragmatic judgment and in light of the frequency with which the Commission handles these cases." *Kraft, Inc. v. F.T.C.*, 970 F.2d 311, 316 (7th Cir.1992).

*McMahon I* held in effect that Asset, in the wake of the Asset Consent Decree case, is entitled to less favorable treatment than any other debt collector of time-barred debts.  However, the FTC "cannot place one competitor at a competitive disadvantage by arbitrarily treating one violator differently from another." *Encyclopaedia Brittanica, Inc. v. F.T.C.*, 605 F.2d 964, 974 (7th Cir. 1979). The FTC meets this requirement by its Notice to the Industry (Appendix D), which leaves no doubt that the intent of the FTC is that all of the industry conform to the practices

enforced by the Asset Consent Decree.

The FTC's position reflects a recognition that the practice of enforcing ancient debts is increasing.  The unfairness of the techniques utilized by the debt buyers to enforce time-barred debt is amplified by the very reasons that statutes of limitations exist. Liability for old debt cannot be proven by the collector nor can claims be defended by the putative debtors. Documents are destroyed; memories fade. The debt collector methods barred by the Asset Consent Decree case represent reasonable limitations on the collection of time-barred debt.

The right of the FTC to impose disclosure requirements when deemed necessary to prevent or remedy deception is beyond question, even though not explicitly provided for by the FTC Act and most other statutes the FTC enforces. *Warner-Lambert Co. v. FTC*, 562 F.2d 749, 756 (D.C. Cir. 1977) (corrective advertising designed to correct misinformation give to past buyers); *Grolier, Inc. v. FTC*, 699 F.2d 983 (9th Cir. 1983) (mandatory disclosures to prospective book purchasers); *Encyclopaedia Britannica, Inc. v. FTC*, 605 F.2d 964 (7th Cir. 1979) (same).

## VII.    OFFERING A SETTLEMENT OF AN OUT-OF-STATUTE DEBT THAT REPRESENTS A SAVINGS OFF OF A BALANCE VIOLATES THE FDCPA

In addition to Plaintiff's claim that Defendants violated the FDCPA by failing to disclose that the debt it was trying to collect was time-barred, Plaintiff also claims that Defendants violated the FDCPA because their offer to settle the debt implied that the debt was recent enough to be legally enforceable. The motion to dismiss of CMS General Partners does not address this particular claim of Plaintiff.

*McMahon I* held that it is potentially misleading to respond to a request for verification by citing a recent date of purchase without mentioning the age of the debt, because it suggests that the debt is recent enough to be legally enforceable. *McMahon I*, *12-14. The court thus recognized that, even if there is no reference to litigation, a defendant collecting an out-of-statute debt may still violate the prohibition in the FDCPA against the false representation of the "character, amount, or legal status of any debt". 15 U.S.C. §1692e(2)(A). Similarly, in *McMahon II*, the court held that a collection letter which offers to settle a time-barred debt could deceive the

unsophisticated consumer into believing that there was a legally enforceable obligation to pay the debt. *McMahon II*, 2012 U.S. Dist. LEXIS 113576 at *9.  Certainly, it is difficult to see how an express misrepresentation concerning the date of last payment on a debt, or an express statement that it was legally enforceable, would not misrepresent its character or legal status.

Offering a "settlement" of a time-barred debt is also the false representation of "the character, amount, or legal status of any debt". 15 U.S.C. §1692e(2)(A). Defendants' letter states:

> Capital Management Services is authorized to accept less than the full balance due as settlement of the above account. The settlement amount of $721.24, which represents 30% of the amount presently owed, is due in our office no later than forty-five (45) days after receiving this notice. We are not obligated to renew this offer.

(FAC ¶ 25, and Exhibit A thereto.) This language suggests that the debt is recent enough to be legally enforceable. The unsophisticated consumer would not read a collection letter stating that the debt buyer is authorized to accept less than the full balance due as settlement of the  account as pertaining to an obligation that is purely a moral one and not legally enforceable.  Indeed, the essence of the distinction between a settlement offer and attempted fraud or extortion is whether the offeror has a good faith belief that there is a colorable legal obligation. *See Collection Prof'ls, Inc. v. Logan*, 695 N.E.2d 1344, 1347 (3rd Dist. 1998); (accord and satisfaction requires a *bona fide* dispute); *WM. C. McGlynn v. D.B. Scott*, 58 N.W. 460, 463 (N. Dak. 1894) ("The law favors the settlement of honest differences, but it will not countenance extortion and fraud."); *In re Morton Allan Segall*, 509 N.E.2d 988, 991 (Ill. 1987) (letters offering settlement were "calculated to deceive"). Defendants' letter is a calculated effort to imply the existence of a valid, legally-enforceable obligation. Even in the absence of a reference to litigation, Defendants' letter is deceptive.

Thus, even if the Court rejects the FTC's stated position that Asset engaged in deception because it "failed to disclose that debts were too old to be legally enforceable or that a partial payment would restart the clock", Defendants' letter is just as much a misrepresentation of "the character, amount, or legal status of any debt" as misrepresenting dates concerning the debt.

## VIII.   CONCLUSION

The FTC has determined that it is "deceptive" for a debt collector to request payment of time-barred debts without disclosure of that fact. The FTC's conclusion was justified and is entitled to deference by this Court. Defendants ignored the FTC's 2009 warning, and thus violated the FDCPA. Furthermore, Defendants offer to "settle" a time-barred debt also violates the FDCPA because it implies to the unsophisticated consumer that the debt is recent enough to be legally enforceable. For the foregoing reasons, the motion to dismiss of "CMS General Partners must be denied.

Respectfully submitted,

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Francis R. Greene
EDELMAN, COMBS, LATTURNER
      & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel A. Edelman, hereby certify that on September 7, 2012, a true and accurate copy of the foregoing document was filed via the Court's CM/ECF system and notification of such filing was sent to the following parties:

James K. Schultz
jschultz@sessions-law.biz

Daniel W. Pisani
dpisani@sessions-law.blz

<u>s/Daniel A. Edelman</u>
Daniel A. Edelman

## <u>TYPE VOLUME CERTIFICATION</u>

I, Daniel A. Edelman, certify that this brief meets the type-volume limitation of the United States District Court Central District pf Illinois Rule 7.1(b) in that it contains 6913 words according to the word-counting feature of Corel WordPerfect 11, the program used to produce it.

<u>s/Daniel A. Edelman</u>
Daniel A. Edelman