UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JUANITA DELGADO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:12-cv-4057-SLD-JAG |
| ) | |
| CAPITAL MANAGEMENT SERVICES ) | |
| LP, CMS GENERAL PARTNER LLC, and ) | |
| CMS GROUP INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Juanita Delgado brings this suit against the Defendants under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Delgado alleges that the Defendants violated the FDCPA when they sent her a debt collection letter which implied that she was liable for a debt for which judicial collection was barred by the Illinois statute of limitations. The Defendants move to dismiss Delgado's Complaint under Rule 12(b)(6), arguing that the FDCPA does not prevent a debt collector from attempting to recover a time-barred debt. Because the Court finds that Delgado has stated plausible claims for relief under the FDCPA, the Defendants' Motion to Dismiss is denied.

### BACKGROUND

The factual allegations are set out in Delgado's Complaint, ECF No. 1. When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts all well-pleaded facts as true and draws all inferences in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074,

1081 (7th Cir. 2008). Jurisdiction is proper pursuant to 28 U.S.C. § 1331, as Delgado's claims arise under the FDCPA.

Defendant Capital Management Services LP ("CMS") operates a collection agency and is a debt collector as defined by the FDCPA. Defendant CMS General Partner LLC is the general partner of CMS and Defendant CMS Group Inc. is a partner of CMS. The Defendants are hereinafter collectively referred to as "Defendants."[1] Delgado is an individual residing in East Moline, Illinois.

On February 7, 2012, CMS sent Delgado a dunning letter[2] seeking to collect on a former credit card debt. The letter stated, in relevant part:

> Dear Juanita Delgado,
>
> This company has been engaged by RESURGENT CAPITAL SERVICES, LP, the servicer of your account, to resolve your delinquent debt of $2404.13. Please submit your payment and make your check or money order payable to Capital Management Services, LP, to the above address. . . .
>
> Capital Management Services, LP is authorized to accept less than the full balance due as settlement of the above account. The settlement amount of $721.24, which represents 30% of the amount presently owed, is due in our office no later than forty-five (45) days after receiving this notice. We are not obligated to renew this offer. . . .
>
> This is an attempt to collect a debt; any information obtained will be used for that purpose. This communication is from a debt collector.

(Compl., Ex. A, ECF No. 1.)

---

[1] In her Complaint, Delgado asserts that the acts of CMS are attributable to CMS General Partner LLC and CMS Group Inc. In their Motion to Dismiss, CMS General Partner LLC and CMS Group Inc. "do not concede" that the acts of Capital Management Services LP are attributable to them. (Mem. of Law in Supp. of CMS General Partner LLC and CMS Group Inc.'s Mot. to Dismiss 1, ECF No. 29.) However, because these two Defendants cite no authority and present no serious argument that they may not be held liable for CMS's actions, the Court will not address this issue in evaluating their Motion to Dismiss.

[2] A dunning letter is a notification sent to a delinquent debtor demanding payment.

2

What the letter did not say was that CMS was time-barred from legally enforcing the debt. Delgado claims that because the statute of limitations on a credit card debt in Illinois is five years, and because the last payment on Delgado's debt was made prior to December 23, 2004, her debt is no longer legally enforceable. The Defendants do not dispute that they are time-barred from collecting on Delgado's debt.

Delgado filed this case as a putative class action in June 2012 alleging that CMS's letter violates § 1692e and § 1692f of the FDCPA because CMS's failure to disclose that her debt was time-barred, combined with its offer to "settle" the account, erroneously suggested that the debt could be legally enforced. In response, the Defendants filed two identical motions to dismiss, ECF Nos. 21 and 28, which the Court will treat as one.

## DISCUSSION

### I. Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) does not resolve the merits of a particular claim, but rather tests only the sufficiency of the allegations set forth in the complaint. Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A complaint must "state a claim to relief that is plausible on its face," meaning that the plaintiff has pleaded sufficient facts for a court to draw the "reasonable inference" that the defendant is liable. *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard, while demanding less than a probability, "asks for more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678, and is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense," *McCauley v. City of Chicago*, 671 F.3d 611, 616

(7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679) (internal quotations omitted). In making such a determination the court must accept the well-pleaded facts in the complaint as true but may disregard legal conclusions or recitations of the elements of the claim. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

The purpose of notice pleading under Rule 8 is to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests, *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) and *Twombly*, 550 U.S. at 555), and to weed out factual allegations that are so "sketchy or implausible" that they fail to provide adequate notice to the defendant of the plaintiff's claim, id. (citing *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). In other words, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together," a task that will vary along with complexity of the case. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010) ("A more complex case ... will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected.").

**II.  The FDCPA**

Delgado claims that CMS engaged in unfair and deceptive acts and practices in violation of §§ 1692e, 1692e(2), 1692e(5), 1692e(10), and 1692f of the FDCPA by failing to disclose that the debt could not be collected through a court action because the statute of limitations had expired. Delgado further alleges that CMS compounded this non-disclosure by offering to "settle" the debt.

Section 1692e broadly prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." This

includes, but is not limited to, falsely representing the character, amount, or legal status of a debt (§ 1692e(2)(A)); threatening to take any action that cannot legally be taken or that is not intended to be taken (§ 1692e(5)); and using false representations or deceptive means to collect or attempt to collect any debt (§ 1692e(10)).  The FDCPA does not require a plaintiff to prove that a notice violated any particular subpart of § 1692e, only that it was a false, deceptive, or misleading misrepresentation or means in connection with the collection of any debt.  *See Ruth v. Triumph P'ships*, 577 F.3d 790, 794 n. 2 (7th Cir. 2009).  Additionally, § 1692f imposes a distinct prohibition on debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt."  *See Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 998 (7th Cir. 2003) (violations of § 1692e and § 1692f are separate inquiries).

When evaluating whether a dunning letter violates § 1692e or § 1692f, the Court views the letter through the perspective of an "unsophisticated investor."  *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012); *Turner*, 330 F.3d at 997 (unsophisticated consumer standard applies to both § 1692e and § 1692f claims).  The unsophisticated investor, while being "uninformed, naïve, [and] trusting," "is not a dimwit," and has "rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences."  *Lox*, 689 F.3d at 822. This Circuit treats the issue of whether an unsophisticated consumer would perceive a collection letter as deceptive or unfair as a question of fact that, if well-pleaded, avoids dismissal on a Rule 12(b)(6) motion.  *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012); *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 760 (7th Cir. 2006) ("[T]he requisite inquiries under § 1692e and § 1692f are necessarily fact bound. . . . [D]istrict courts must act with great restraint when asked to rule in this context on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).")  Likewise, because district judges are not good proxies for the

unsophisticated consumer whose interests the FDCPA protects, district courts should be hesitant to dismiss § 1692e and § 1692f claims. *McMillan*, 455 F.3d at 759. Nevertheless, a plaintiff's complaint will be found to fail to state a claim when it is "apparent from the reading of the letter that not even a significant fraction of the population would be misled by it." *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574 (7th Cir.2004) (internal quotations omitted).

Turning to CMS's Motion to Dismiss, CMS argues that Delgado's allegations have been rejected by a number of courts who have held that sending a letter seeking collection of a time-barred debt does not violate the FDCPA. *See McMahon v. LVNV Funding, LLC*, No. 12 C 1410, 2012 WL 2597933, at *2 (N.D. Ill. July 5, 2012); *Murray v. CCB Credit Servs., Inc.*, No. 04 C 7456, 2004 WL 2943656, at *2 (N.D. Ill. Dec. 15, 2004); *Walker v. Cash Flow Consultants, Inc.*, 200 F.R.D. 613, 616 (N.D. Ill. 2001); *accord Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 771 (8th Cir. 2001); *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 33 (3rd Cir. 2001). CMS first argues that the FDCPA does not explicitly require a debt collector attempting to recover on a time-barred debt to disclose that the debt is time-barred. *See McMahon*, 2012 WL 2597933, at *2. But § 1692e and § 1692f broadly proscribe *types* of conduct (e.g. deceptive or misleading representations, and unfair or unconscionable means, respectively), and their examples of prohibited conduct are non-exhaustive. *Ruth*, 577 F.3d at 794 n. 2; *Turner*, 330 F.3d at 996. The Court therefore gives little weight to the fact that CMS's conduct is not specifically prohibited by the FDCPA.

CMS's principle argument, though, pertains to the nature of Illinois's statute of limitations. Under Illinois law, as in most states, the running of the statute of limitations does not extinguish the debt itself but rather limits the period within which legal action may be taken

6

to enforce it.³ *See LaPine Scientific Co. v. Lenckos*, 420 N.E. 655, 658 (Ill. App. Ct. 1981). Various courts have therefore reasoned that a debt collector who requests voluntary repayment of a time-barred debt does not violate the FDCPA so long as its effort to collect on such a debt is not accompanied by actual litigation or a threat, either explicit or implicit, of future litigation. *See Freyermuth*, 248 F.3d at 771; *Huerta*, 641 F.3d at 33; *McMahon*, 2012 WL 2597933 at *2; *Murray*, 2004 WL 2943656 at *2; *Walker*, 200 F.R.D. at 616; *see also Shorty v. Capital One Bank*, 90 F.Supp.2d 1330, 1331-33 (D. N.M. 2000). Threatening litigation is presumptively misleading because the creditor cannot actually sue to collect the debt. Because its letter did not explicitly or implicitly threaten Delgado with litigation, CMS argues, it was not required to disclose to Delgado that the statute of limitations on her debt had run.

Other authorities have a taken a different view of dunning letters like CMS's that, while not threatening litigation, nonetheless attempt to collect on a time-barred debt without disclosing to the debtor that the statute of limitations has run. In a recent report titled *The Structure and Practices of the Debt Buying Industry*, the Federal Trade Commission outlined the increasingly common practice in which original creditors sell their debts to "debt buyers," who may in turn resell debts to other debt buyers. Federal Trade Commission, *The Structure and Practice of the Debt Buying Industry* (January 2013) (hereinafter "*FTC Report*"). Although her Complaint does not state this outright, it appears that CMS bought Delgado's debt from another creditor. The FTC Report identifies two concerns that arise from such debt buying. The first is that, as creditors sell debts to one another, the information creditors have regarding those debts becomes less accurate over time, thus increasing the likelihood that creditors will collect the wrong

---

³ A notable exception within this Circuit is Wisconsin, where the expiration of the statute of limitations actually extinguishes the debt itself. *See* WIS. STAT. ANN. § 893.05 (West 2012) ("When the period within which an action may be commenced on a Wisconsin cause of action has expired, the right is extinguished as well as the remedy.").

amount or collect from the wrong consumer, or both. The second concern, which is more relevant to Delgado's case, is the possibility that debt buyers will deceive consumers into paying debts whose statutes of limitations have run. The FTC Report, citing a 2010 litigation report also prepared by the FTC (*Repairing a Broken System: Protecting Consumers in Debt Collection Litigation and Arbitration* (hereinafter "*Broken System*")), notes that "most consumers do not know or understand their legal rights with respect to the collection of time-barred debt, so attempts to collect on stale debt in many circumstances may create a misleading impression that the consumer could be sued." *FTC Report* at 47. The FTC Report also cites a 2010 study showing that consumers' knowledge that a debt is time-barred affects their decision-making as to which debts to pay and in what order. *See* Timothy E. Goldsmith and Nathalie Martin, *Testing Materiality under the Unfair Practices Act: What Information Matters When Collecting Time-Barred Debts?*, 64 Consumer Fin. L. Q. Rep. 372, 379-80 (Winter 2010). Specifically, 34% of subjects said they would decline to pay a hypothetical debt when they were told the debt "cannot be enforced against you through court action because the enforcement period has run out." *Id.* Only 6% of subjects said they would decline to pay when they had not received the notice. *Id.*

The FTC Report further notes that nondisclosure of the fact that a debt is time-barred may be deceiving to consumers because, in many states, making a partial payment on a stale debt revives the entire debt even if the original statute of limitations has already expired. *See, e.g.,* 735 Ill. Comp. Stat. 5/13-206 (West 2007) (statute of limitations for written contracts may be revived by a new payment or promise to pay); *see also* Ronald D. Menna, Jr., *Follow the Money: The Partial Payment Doctrine and Unwritten Contracts*, 20 DCBA Brief 8 (April 2008) (discussing whether partial payment doctrine applies to unwritten contracts in Illinois). Thus, it is possible that if Delgado made a $50 payment on her $2404.13 debt, the entire debt would have

been revived and the statute of limitations would restart, although this is an inquiry which the Court lacks sufficient information to determine here, nor is it necessary for the Court's ultimate resolution of the motion before it. Most consumers are not aware of this consequence, and, not surprisingly, debt collectors generally do not disclose to consumers that making any payment on a time-barred debt revives the collector's ability to sue to collect the entire debt. *Broken System* at 27.

To avoid creating such misleading impressions, the FTC has said that if a collector knows or should know that it is collecting on a time-barred debt, it must inform the consumer that (1) the collector cannot sue to collect the debt and (2) providing a partial payment would revive the collector's ability to sue to collect the balance. *FTC Report* at 47. The FTC and the Consumer Financial Protection Bureau, which has subsumed much of the FTC's enforcement responsibility, have also brought actions against debt buyers for collecting on stale debts without making these kinds of disclosures. In one such case filed by the FTC against Asset Acceptance LLC ("Asset"), the FTC's complaint alleged:

> Many consumers do not know if the accounts that Asset is attempting to collect are beyond the statute of limitations. Consumers also do not realize that making a partial payment on a debt, or making a written promise to pay will, in many instances, revive the debt. When Asset contacts consumers to collect on a debt, many consumers believe they could experience serious negative consequences, including being sued, if they fail to pay the debt. Similarly, many consumers believe that making a partial payment on a debt in response to Asset's collection efforts is a positive action that can avert the negative consequences of nonpayment. If consumers knew, in connection with a past-statute debt, that Asset had no legal means to enforce collection of the debt, or understood that making a partial payment or a written promise to pay would revive it, some consumers would likely choose not to make a payment or a written promise to pay.

(Pl.'s Resp. to Mot. to Dismiss, Exhibit A at 11, ECF No. 32 ("Asset Complaint").) The FTC alleged that Asset, by not making these disclosures, violated §§ 1692e, 1692e(2)(A), and

9

1692e(10) of the FDCPA as well as § 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a). *Id.* at 18-19, 25-26. Asset subsequently consented to a settlement order requiring it to disclose to consumers, for any debt that Asset knows or should know may be beyond the statute of limitations: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it." (Pl.'s Resp. to Mot. to Dismiss, Exhibit A at 13, ECF No. 32 ("Asset Consent Order").) Similarly, on October 1, 2012, the FTC, the Consumer Financial Protection Bureau, and other agencies entered into consent orders with three American Express-related entities requiring disclosure that debts they attempt to collect are time-barred. (*See* ECF No. 35.)

The position taken by the FTC, both in its reports and enforcement actions, contradicts the above-cited cases from the Northern District of Illinois and elsewhere in that the FTC does not view the affirmative threat of litigation as a necessary element for a consumer to be deceived or misled by a dunning letter that seeks to collect on a stale debt. Rather, taking collection action on a time-barred debt may be considered deceptive, thus necessitating the need for the aforementioned disclosures to consumers regarding the age of their debts and the consequences of making payments on them. Not surprisingly, the parties dispute how much deference this Court should give to the FTC and to the consent orders that require disclosures from debt buyers. While Delgado argues that the Court should entirely defer to the FTC's definition of what constitutes an unfair and deceptive practice under *Chevron U.S.A., Inc. v. Natural Res. Def. Counsel, Inc.*, 467 U.S. 837 (1984), CMS contends that the Court should afford the FTC no deference at all.

This Court's Urbana Division recently had the occasion to visit this issue. *See McRill v. Nationwide Credit, Inc.*, No. 12-2175, 2012 WL 6727974 (C.D. Ill. December 6, 2012). In a

thoughtful and thorough Report and Recommendation (which was accepted by the district court), Magistrate Judge Bernthal found that *Chevron* deference should not be afforded to the enforcement efforts and reports of the FTC because such sources do not carry the force of law as understood by *Chevron*. *McRill*, 2012 WL 6727974, at *5; *see also United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001) (*Chevron* deference only warranted when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and the agency interpretation claiming deference was promulgated in the exercise of that authority); *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference.").

However, as Judge Bernthal noted, that is not to say that the FTC sources are not entitled to a degree of respect. *McRill*, 2012 WL 6727974, at *5; *see Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Even if Congress has not expressly delegated authority to an agency to interpret a statute, the agency's resolution of a particular question "certainly may influence courts facing questions the agencies have already answered." *Mead*, 533 U.S. at 227. Because "the well-reasoned views of the agencies implementing a statute 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance,'" *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998) (quoting *Skidmore*, 323 U.S. at 139–140), "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer," *Chevron*, 467 U.S. at 844. With this in mind, the Court finds the FTC's position persuasive: absent disclosures to consumers as to the age of their debt, the legal enforceability of it, and the consequences of making a payment on it, it is plausible that

dunning letters seeking collection on time-barred debts may mislead and deceive unsophisticated consumers.

Moreover, while Delgado alleges that CMS's nondisclosure was by itself deceptive and unfair under the FDCPA, she also claims that her case is made more compelling by CMS's offer of "settlement." (Compl. at 3, ECF No. 1.) Delgado argues that by offering to "settle" her account, CMS came "about as close to a direct statement that a debt is legally enforceable through litigation without using the words 'litigation' or 'legally enforceable.'" (Pl.'s Resp. to Mot. to Dismiss 3, ECF No. 32.) This Court agrees with others who have found it plausible that an unsophisticated consumer could be deceived into believing that the offer of settlement implies a legally enforceable obligation to pay the debt.[4] *See Magee v. Portfolio Recovery Ass'ns, LLC*, 12-cv-1624, 2013 WL 239100, at *5 (N.D. Ill. January 17, 2012) (whether settlement language is misleading and confusing as to there being a legally enforceable obligation to pay is a fact-intensive inquiry that is not properly resolved at the pleading stage); *McMahon v. LVNV Funding, LLC*, No. 12-cv-1410, 2012 WL 3307011, at *1 (N.D. Ill. Aug. 13, 2012) (finding a dunning letter offering to settle a debtor's time-barred debt to plausibly violate the FDCPA). The Court is mindful that this Circuit has held that in other contexts settlement offers do not violate the FDCPA. *See Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775 (7th Cir. 2007). In that case, though, the court addressed the concern that settlement offers (which often include wording like "Act now," or set deadlines to accept the offer) might mislead consumers

---

[4] Settlement offers may also deceive customers who believe that, by making a small payment to "settle" their debt, they have only obligated themselves in the amount of that partial payment. As discussed above, under the laws of many states a partial payment on a time-barred debt revives the entire balance of the debt for a new statute of limitations period. *FTC Report* at 47. CMS's offer to "settle" Delgado's account for $721.24 could thus be viewed as deceptive or unfair for this reason as well. Because Delgado does not make this argument, however, the Court will not consider it in its analysis.

by giving them the false impression that they have only one opportunity to accept the deal. This Circuit's holding in *Evory* does not address whether a settlement offer could impermissibly imply a legal obligation to pay a time-barred debt.

For all of these reasons, the Court finds that Delgado has stated plausible claims for relief under 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), and § 1692f. With respect to § 1692e, it is plausible that an unsophisticated consumer with only "rudimentary knowledge about the financial world" could view CMS's dunning letter as false, deceptive, or misleading, because the letter's failure to disclose that CMS cannot collect on the debt, compounded by its offer of settlement, implies a legal obligation to pay. It is likewise plausible that an unsophisticated consumer could find that the letter makes a false representation of the character or legal status of the debt (i.e. that it is legally enforceable) under § 1692e(2) or is a threat to take any action that cannot legally be taken (i.e. suing Delgado) under § 1692e(5), or could consider it a false representation or deceptive means to attempt to collect a debt under § 1692e(10).

With respect to § 1692f, the Court also finds it plausible that an unsophisticated consumer could view CMS's letter as an unfair or unconscionable means to collect or attempt to collect on Delgado's debt. The statute does not define "unfair or unconscionable means," aside from setting forth a non-exhaustive list of actions which could violate § 1692f, and legislative history and FTC guidance are likewise of little help. *See McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 764 (7th Cir. 2006). At this early stage of litigation, it is plausible that an unsophisticated consumer could view the dunning letter as unfair or unconscionable, especially in light of the FTC's reports and enforcement efforts and the empirical data cited above. Further, because the issue of whether an unsophisticated consumer would perceive a collection letter as unfair is a question of fact, and because district judges are not good proxies for the

unsophisticated consumer, the Court declines the opportunity to dismiss Delgado's Complaint at the pleading stage. *See McRill v. Nationwide Credit, Inc.*, No. 12-2175, 2012 WL 6727974, at *7 (C.D. Ill. December 6, 2012) (finding plaintiff's complaint, which alleged that defendant failed to disclose that debt was time-barred, to state a plausible claim under § 1692f); *Magee v. Portfolio Recovery Ass'ns*, LLC, 12-cv-1624, 2013 WL 239100, at *5 (N.D. Ill. January 17, 2012) (plausible § 1692f violation where defendant used settlement language and failed to disclose that debt was past statute of limitations); *see also id.* (attempting to define "unfair or unconscionable" under the statute, and finding plaintiff's § 1692f claim sufficient to withstand a Rule 12(b)(6) motion); *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565-66 (7th Cir. 2004) (plaintiff stated a claim under § 1692e and § 1692f sufficient to survive a Rule 12(b)(6) motion when the dunning letter at issue "could conceivably mislead an unsophisticated consumer"). Because Delgado has given "fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)), the Defendants' Motions to Dismiss are denied.

## CONCLUSION

For the reasons set forth above, the Court DENIES the Defendants' Motions to Dismiss, ECF Nos. 21 and 28.

Entered this 22nd day of March, 2013.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE
